UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| MARY BROOKE OBERWETTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action 09-0588 (JDB) |
| | ) | |
| KENNETH HILLIARD, and | ) | |
| KENNETH L. SALAZAR, | ) | |
| | ) | |
| Defendants. | ) | |

_____ )

### DEFENDANT'S MOTION TO DISMISS

On the evening of April 12, 2008, Plaintiff and a number of her friends began dancing within the Jefferson Memorial. They did so to celebrate and honor Thomas Jefferson, his ideals, and his political legacy. Plaintiff was ultimately arrested as a result of her expressive dancing, and charged with violating 36 C.F.R. § 2.32(a)(1)-(2) and 36 C.F.R. § 7.96(g)(3)(ii)(C). In this action, Plaintiff is seeking a declaratory judgment that: (1) the kind of expressive activity and assembly in which she was engaged within the Jefferson Memorial is protected by the First Amendment; and thus (2) 36 C.F.R. § 2.32(a)(1)-(2) and 36 C.F.R. § 7.96(g)(3)(ii)(C) are unconstitutional to the extent that they are applied to prohibit such activity. Plaintiff is also seeking injunctive relief that is consistent with the above-described declaratory relief. Finally, Plaintiff is seeking money damages against the police officer who arrested her. However, as demonstrated in the attached memorandum of points and authorities, Plaintiff is not entitled to any of the relief that she is seeking. Accordingly, this Court should grant the instant motion and dismiss this case.

Respectfully submitted,

_____/s/_____
CHANNING D. PHILLIPS, D.C. Bar # 415793
Acting United States Attorney

_____/s/_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_____/s/_____
CHRISTOPHER B. HARWOOD
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C.  20530
Phone: (202) 307-0372
Fax: (202) 514-8780
Christopher.Harwood@usdoj.gov

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          )
MARY BROOKE OBERWETTER,                   )
                                          )
        Plaintiff,                        )
                                          )
        v.                                )        Civil Action 09-0588 (JDB)
                                          )
KENNETH HILLIARD, and                     )
KENNETH L. SALAZAR,                       )
                                          )
        Defendants.                       )
_____  )

### DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS

At about 11:55 p.m. on April 12, 2008, Plaintiff and approximately 17 of her friends began dancing within the Jefferson Memorial.[1]  According to Plaintiff, the purpose of the dancing was to celebrate and honor Thomas Jefferson, his ideals, and his political legacy on the date of his birth (which is April 13).  Shortly after Plaintiff and her friends started dancing, Kenneth Hilliard, a United States Park Police officer,[2] ordered her to stop dancing and leave the Jefferson Memorial.  Plaintiff did not follow that order, even after Officer Hilliard repeated it a second time.  As a result, Officer Hilliard arrested Plaintiff and charged her with interfering with an agency function, pursuant to 36 C.F.R. § 2.32(a)(1)-(2), and demonstrating without a permit, pursuant to 36 C.F.R. § 7.96(g)(3)(ii)(C).[3]  While Officer Hilliard was interacting with Plaintiff,

_____

[1] For purposes of the instant motion (and the instant motion only), Defendants accept as true the factual allegations set forth in Plaintiff's Complaint.  (See infra n.11.)

[2] The Park Police is a division of the National Park Service.  (See Hilliard Decl. ¶1.)  The National Park Service is an agency within the Department of the Interior.  (Id.)

[3] Under 36 C.F.R. § 2.32(a)(1), it is unlawful to "[t]hreaten[], resist[], intimidat[e], or intentionally interfer[e] with a government employee or agent engaged in an official duty, or on account of the performance of an official duty."  Under 36 C.F.R. § 2.32(a)(2), it is unlawful to "[v]iolat[e] the lawful order of a government employee or agent authorized to maintain order and

several of his Park Police officer colleagues were ushering her dancing friends out of the Jefferson Memorial.

      Plaintiff has now brought this action arising out of the above-described actions of Officer Hilliard.  In this action, Plaintiff is seeking a declaratory judgment that:  (1) the kind of expressive activity and assembly in which she was engaged within the Jefferson Memorial is protected by the First Amendment; and thus (2) 36 C.F.R. §§ 2.32(a)(1)-(2) and 7.96(g)(3)(ii)(C) are unconstitutional to the extent that they are applied to prohibit such activity.  Ultimately, Plaintiff wants this Court to issue an order enjoining the government from enforcing 36 C.F.R. §§ 2.32(a)(1)-(2) and 7.96(g)(3)(ii)(C) so as to forbid expressive dancing, or assembly involving expressive dancing, (collectively, "expressive dancing") within the Jefferson Memorial.  In addition, Plaintiff is seeking money damages from Officer Hilliard in his individual capacity based upon his alleged violation of her constitutional rights.  Plaintiff claims that Officer Hilliard violated her rights under the First Amendment when he caused her to stop dancing within the Jefferson Memorial, and that he violated her rights under the Fourth Amendment when he arrested her.

      Plaintiff, however, is not entitled to any of the relief that she is seeking.  <u>First</u>, Plaintiff is not entitled to the declaratory or injunctive relief that she is seeking.  Plaintiff does not have a First Amendment right to engage in expressive dancing within the Jefferson Memorial.  Nor does anyone else.  Thus, the challenged regulations, 36 C.F.R. §§ 2.32(a)(1)-(2) and 7.96(g)(3)(ii)(C), are constitutional to the extent that they are applied to prohibit expressive dancing within the Memorial.  No declaratory judgment should issue to the contrary.  And, no order should issue

---

control public access and movement during . . . law enforcement actions . . . ."  Finally, under 36 C.F.R. § 7.96(g)(3)(ii)(C), it is unlawful to engage in an array of expressive activities within the Jefferson Memorial.

enjoining the government from enforcing the challenged regulations so as to prohibit expressive

dancing within the Memorial.  The above conclusions follow from the fact that the interior of the

Jefferson Memorial is a nonpublic forum.[4]  There can be no reasonable dispute that the

Memorial's interior is a nonpublic forum, particularly given the Memorial's purpose, physical

characteristics, and regulatory history.  The Memorial is, has long been, and is intended to be a

place of calm, tranquility, and reverence—a place where visitors can go to celebrate and honor

Jefferson and enjoy and contemplate the Memorial itself without the distraction of public

demonstrations and other expressive activities.  The Memorial is akin to a temple or a shrine

(both in terms of its purpose and its physical characteristics), not a place of public expression.

No visitor to the Memorial could confuse its interior with a place that is open to public assembly

or debate.  Nor is the interior of the Memorial comparable to those places that have been found

to constitute public forums.  Moreover, by regulation, the Memorial's interior has been closed to

expressive activities for more than 30 years.

Because the interior of the Jefferson Memorial is a nonpublic forum, the government may

prohibit expressive activities therein—without violating the First Amendment—so long as the

prohibition is:  (1) viewpoint neutral; and (2) reasonable in light of the Memorial's use.  Here,

the prohibition on expressive dancing within the Memorial satisfies those requirements.

Expressive dancing is prohibited within the Memorial pursuant to 36 C.F.R. § 7.96(g)(3)(ii)(C),[5]

---

[4] In this brief, when Defendants refer to the interior of the Jefferson Memorial, they are referring to the area within the Memorial's outermost series of columns.  When Defendants refer to the Memorial's interior chamber, they are referring to the circular room in which the statue of Jefferson is located.

[5] Although Plaintiff was charged with violating both 36 C.F.R. § 7.96(g)(3)(ii)(C) and 36 C.F.R. § 2.32(a)(1)-(2), the latter regulation is not aimed at regulating expressive conduct within the Jefferson Memorial.  Rather, it is aimed at ensuring that members of the public do not interfere with, or violate the orders of, government officials.  Plaintiff was not charged with violating 36 C.F.R. § 2.32(a)(1)-(2) because she engaged in expressive dancing within the

and that regulation is both viewpoint neutral and reasonable (insofar as it is applied to prohibit expressive dancing).[6] Thus, the prohibition on expressive dancing within the Memorial is constitutional. And, as a result: (1) neither Plaintiff nor anyone else has a First Amendment right to engage in expressive dancing within the Memorial; and (2) 36 C.F.R. §§ 2.32(a)(1)-(2) and 7.96(g)(3)(ii)(C) are constitutional to the extent that they are applied to prohibit such dancing. Accordingly, Plaintiff is not entitled to the declaratory or injunctive relief that she is seeking.

Moreover, even if the interior of the Jefferson Memorial were a public forum, the prohibition on expressive dancing therein would still be constitutional. That is because the regulation pursuant to which expressive dancing is prohibited, 36 C.F.R. § 7.96(g)(3)(ii)(C), constitutes a valid time, place, and manner restriction (insofar as it is applied to prohibit expressive dancing). The regulation (as to that application) is content neutral, is narrowly tailored to serve a significant government interest (i.e., that of maintaining an atmosphere of calm, tranquility, and reverence within the Memorial's interior), and leaves open ample alternative channels for communication. Thus, even if the Memorial were a public forum, Plaintiff would not be entitled to the declaratory or injunctive relief that she is seeking.

Second, Plaintiff is not entitled to the monetary relief that she is seeking. Plaintiff cannot obtain money damages from Officer Hilliard as a result of his alleged violation of her constitutional rights. The doctrine of qualified immunity shields Officer Hilliard from liability

---

Memorial. Rather, she was charged with violating that regulation because she repeatedly refused to follow the orders that she had received from Officer Hilliard.

[6] In addition to expressive dancing, 36 C.F.R. § 7.96(g)(3)(ii)(C) is applied to prohibit other expressive activities within the Jefferson Memorial. However, such other applications of the regulation are not at issue in this case. Thus, in the instant filing, Defendants address the constitutionality of 36 C.F.R. § 7.96(g)(3)(ii)(C) "only insofar as it is applied to prohibit expressive dancing."

for such damages. Therefore, in light of all of the above, this Court should dismiss this action, as Plaintiff is not entitled to any of the relief that she is seeking.

## I.    BACKGROUND

### A.    The Regulatory Framework Governing the Jefferson Memorial and the Other Parks and Monuments within the National Capital Region

The National Park Service ("NPS") has been charged with regulating the use of the Nation's parks and monuments.[7] See 16 U.S.C. §§ 1, 20. The NPS' regulatory duties extend to "the National Capital Region, which include[s] . . . the National Mall, the Washington Monument grounds, and the Lincoln, Jefferson, and Vietnam Veterans Memorials." ISKCON v. Kennedy, 61 F.3d 949, 951 (D.C. Cir. 1995). The NPS is thus responsible for regulating the use of the National Mall, the Washington Monument grounds, the Lincoln, Jefferson, and Vietnam Veterans Memorials, and the other parks and monuments within the National Capital Region. See id. at 952; 16 U.S.C. § 1. To that end, the NPS has promulgated a series of regulations. See 16 U.S.C. § 3. Those regulations appear at 36 C.F.R. § 7.96.

Among other things, the regulations at 36 C.F.R. § 7.96 identify the areas within the National Capital Region where the public may engage in expressive activities. Pursuant to 36 C.F.R. § 7.96(g), the NPS allows "demonstrations" and "special events" (collectively, "expressive activities") in almost all areas within the National Capital Region. The terms "demonstrations" and "special events" are defined at 36 C.F.R. § 7.96(g)(1)(i)-(ii).[8] Together,

---

[7] As stated above, the United States Park Police is a division of the NPS. The Park Police are responsible for (among other things) enforcing NPS regulations. (Hilliard Decl. ¶1.)

[8] "The term 'demonstrations' includes demonstrations, picketing, speechmaking, marching, holding vigils or religious services and all other like forms of conduct which involve the communication or expression of views or grievances, engaged in by one or more persons, the conduct of which has the effect, intent or propensity to draw a crowd or onlookers. This term does not include casual park use by visitors or tourists which does not have an intent or propensity to attract a crowd or onlookers." 36 C.F.R. § 7.96(g)(1)(i). "The term 'special

the terms encompass an array of expressive activities, including the activity that is at issue in this

case—expressive dancing.  See 36 C.F.R. at § 7.96(g)(1)(i)-(ii).  Expressive dancing clearly falls

within the scope of the term "demonstrations."  See id. at § 7.96(g)(1)(i).  Indeed, such conduct

"involve[s] the communication or expression of views . . . , engaged in by one or more persons,

. . . [and] has the effect, intent or propensity to draw a crowd or onlookers."  Id.

Although the NPS allows demonstrations and special events in almost all areas within the

National Capital Region, there are four areas where such expressive activities are prohibited.

Those areas are:

- "[t]he Washington Monument, which means the area enclosed within the inner circle that surrounds the Monument's base";

- "[t]he Lincoln Memorial, which means that portion of the park area which is on the same level or above the base of the large marble columns surrounding the structure, and the single series of marble stairs immediately adjacent to and below that level";

- "[t]he Vietnam Veterans Memorial," which "means the structures and adjacent areas extending to and bounded by the south curb of Constitution Avenue on the north, the east curb of Henry Bacon Drive on the west, the north side of the north Reflecting Pool walkway on the south and a line drawn perpendicular to Constitution Avenue two hundred (200) feet from the east tip of the memorial wall on the east"; and

- "[t]he Jefferson Memorial, which means the circular portion of the Jefferson Memorial enclosed by the outermost series of columns, and all portions on the same levels or above the base of these columns."

Id. at § 7.96(g)(3)(ii)(A)-(D), (g)(1)(x); (see Lorenzetti Decl. ¶¶24-25 & Attachment ("Att.") 7 at

155-56 (containing diagrams of the Washington Monument and the Lincoln, Jefferson, and

Vietnam Veterans Memorials, the darkened portions of which denote the locations where

---

events' includes sports events, pageants, celebrations, historical reenactments, regattas, entertainments, exhibitions, parades, fairs, festivals and similar events (including such events presented by the National Park Service), which are not demonstrations under paragraph (g)(1)(i) of this section, and which are engaged in by one or more persons, the conduct of which has the effect, intent or propensity to draw a crowd or onlookers.  This term also does not include casual park use by visitors or tourists which does not have an intent or propensity to attract a crowd or onlookers."  Id. at § 7.96(g)(1)(ii).

expressive activities are precluded).  The only exceptions to the above-described prohibition on demonstrations and special events are for:  (1) "the official annual commemorative Washington birthday ceremony" at the Washington Monument; (2) "the official annual commemorative Lincoln birthday ceremony" at the Lincoln Memorial; (3) the "official annual Memorial Day and Veterans Day commemorative ceremonies" at the Vietnam Veterans Memorial; and (4) "the official annual commemorative Jefferson birthday ceremony" at the Jefferson Memorial.  36 C.F.R. § 7.96(g)(3)(ii)(A)-(D).

The prohibition on expressive activities at the Washington Monument and the Lincoln, Jefferson, and Vietnam Veterans Memorials has its regulatory origin in 1975.  In that year, the NPS issued a proposed rule prohibiting demonstrations and special events at the Washington Monument, the Kennedy Center, the Lincoln and Jefferson Memorials, and Constitution Gardens.  See 40 Fed. Reg. 58651, 58654 (Dec. 18, 1975).  The following year, in 1976, the NPS published a final rule prohibiting demonstrations and special events at each of the above locations (the "1976 final rule").  See 41 Fed. Reg. 12879, 12882 (Mar. 29, 1976).  The NPS explained its rationale for the prohibition on demonstrations and special events as follows:

> The Department believes that the enumerated areas are areas within which the government's interest in protecting legitimate security and park value interests, including the maintenance of an atmosphere of calm, tranquility, and reverence in the vicinity of major memorials, is substantial.  Maintenance of such an atmosphere will substantially enhance the visitor's park experience and does not place an unreasonable limitation on First Amendment activity especially in light of the availability of other nearby park areas.

Id. at 12880.

Since its enactment, the 1976 final rule has been amended several times.  However, none of those amendments is relevant to the instant litigation.[9]  The expressive activities that were

---

[9] For example, in 1984, the NPS amended the 1976 final rule to (among other things): (1) prohibit demonstrations and special events at the Vietnam Veterans Memorial; and

prohibited at the Jefferson Memorial by the 1976 final rule are the same as those which are

prohibited at the Jefferson Memorial today.  The 1976 final rule prohibited "demonstrations" and

"special events" within the "Jefferson Memorial," and the definitions of those terms in the 1976

final rule are substantively identical to the definitions of those terms that currently appear at 36

C.F.R. § 7.96(g).  Compare 41 Fed. Reg. at 12881-82 with 36 C.F.R. § 7.96(g)(1)(i)-(ii),

(g)(3)(ii)(C).

### B.    The Jefferson Memorial's Location and Physical Characteristics

The Jefferson Memorial (which was completed in 1943) is located on the south bank of

the Tidal Basin in West Potomac Park in Washington, D.C.  (See Lorenzetti Decl. Att. 1 at 1-2.)

That site is one of prominence within the National Capital Region.  It is the southernmost point

of a carefully-designed compass-like scheme involving the Washington Monument, the Capitol,

the White House, the Lincoln Memorial, and the Jefferson Memorial.  (See Lorenzetti Decl. Att.

2 at 1-2.)  The Washington Monument sits at the center of the aforementioned scheme, with the

Capitol to its east, the Lincoln Memorial to its west, the White House to its north, and the

Jefferson Memorial to its south.  (See id. at 2.)  The significance of the site chosen for the

Jefferson Memorial is captured in the following excerpt from the official 1956 NPS brochure for

the Jefferson Memorial:

> The importance of Jefferson as one of the great figures in the Nation's history demanded
> a memorial site of prominence in the central plan of the Capital City and in relation to the
> other great memorials already built.  The Capitol, the White House, and the Mall were
> located in accordance with the famous L'Enfant Plan.  These, together with the erection
> of the Washington Monument and Lincoln Memorial on the west axis of the Capitol, long
> ago established the cardinal points of the city's plan.  The lone remaining site in this

---

(2) remove the prohibition on demonstrations and special events at Constitution Gardens.  See 49
Fed. Reg. 39677, 39677, 39681 (Oct. 10, 1984).  In addition, in 1997, the NPS amended the 1976
final rule to (among other things) remove the prohibition on demonstrations and special events at
the Kennedy Center.  See 62 Fed. Reg. 32201, 32201-03 (June 13, 1997).

cross-like scheme was the one selected for the Jefferson Memorial south of the Tidal Basin on a line with the south axis of the White House.

(Id. at 1.)

In terms of its physical characteristics, the Jefferson Memorial is a circular, open-air structure that is topped by a domed roof.  (See id. at Front Cover.)  It is more than 150 feet in diameter, and its dome reaches a height of approximately 100 feet.  (See id. at 4; Lorenzetti Decl. ¶13.)  The Memorial is surrounded on all sides by an outer series of Ionic columns (the "outermost series of columns").[10]  (See Lorenzetti Decl. Att. 1 at 2; Lorenzetti Decl. Att. 2 at Front Cover.)  The front of the Memorial faces north (i.e., towards the Tidal Basin, the Washington Monument, and the White House).  (Lorenzetti Decl. ¶13.)  On the front side of the Memorial, there are approximately 40 steps (the "north steps").  (Id.; see Lorenzetti Decl. Att. 2 at Front Cover; Lorenzetti Decl. Att. 5 at 3.)  The north steps lead from ground level to a portico, at the back of which is a large, open-air entryway (the "north entryway").  (See Lorenzetti Decl. Att. 2 at Front Cover; Lorenzetti Decl. ¶13; Lorenzetti Decl. Att. 5 at 3.)  The north entryway serves as the entrance to the Memorial's interior chamber.  (See Lorenzetti Decl. ¶13.)  To access the Memorial's interior chamber, a visitor must walk through the north entryway.  (See id.)  And, to walk through the north entryway, a visitor must first ascend the north steps.  (See id.)  The Memorial's portico is topped by a triangular pediment, which is supported by a row of Ionic columns.  (See Lorenzetti Decl. Att. 2 at Front Cover; Lorenzetti Decl. Att. 5 at 3.)  That row of Ionic columns is part of the Memorial's outermost series of columns.  (See id.)

Attachments 1 through 6 to the Lorenzetti Declaration (which is being submitted herewith) contain pictures of the Memorial's exterior.  Notably, the Memorial's exterior design is similar to that of the Pantheon in Rome.  (Compare Lorenzetti Decl. Att. 5 at 3 with Ex. A.)

---

[10] The Memorial's interior also contains numerous Ionic columns.

That is not a coincidence. Jefferson was (among other things) an architect, and he admired the Pantheon. (See Lorenzetti Decl. Att. 2 at 2.) The Memorial was intentionally designed to emulate the Pantheon. (See id.)

The north steps (which, as stated above, lead to the north entryway and to the Memorial's interior chamber) are accessible to the public only by way of: (1) a public path that runs along the Tidal Basin; and (2) a public path that traverses West Potomac Park. (See Lorenzetti Decl. ¶14.) Importantly, once a visitor has ascended the north steps, he has reached the area within the Memorial's outermost series of columns—the area within which demonstrations and other expressive activities are prohibited under 36 C.F.R. § 7.96(g)(3)(ii)(C). (See Lorenzetti Decl. Att. 7 at 156; Lorenzetti Decl. Att. 5 at 3.) After ascending the north steps and passing through the outermost series of columns, a visitor may walk straight a few paces—through the north entryway—and into the Memorial's interior chamber. (See Lorenzetti Decl. Att. 5 at 3.) When walking through the north entryway, a visitor passes by a 12-by-18-inch sign that says "QUIET RESPECT PLEASE." (See Lorenzetti Decl. ¶¶13, 20.) The sign is attached to a pedestal that is situated in the middle of the north entryway. (See id. at ¶13.)

The Memorial's interior chamber consists of a large, circular room that is dominated by a bronze statue of Jefferson. (See id. at ¶14.) The statue is situated at the center of the interior chamber. (See id.) It is 19 feet high, and stands on a pedestal that is six feet high. (See Lorenzetti Decl. Att. 1 at 2.) The statue depicts Jefferson, holding what is believed to be the Declaration of Independence. (See id.) The interior chamber has a domed ceiling that reaches approximately 67 feet above the head of the statue. (See Lorenzetti Decl. Att. 2 at 4; Lorenzetti Decl. Att. 5 at 3.)

There are four walls in the Memorial's interior chamber.  Each wall bears an inscribed quotation from Jefferson's writings:

> The quotation on the southwest wall comes from the Declaration of Independence.  A statement on the evolution of law and the Constitution . . . is [quoted] on the southeast wall.  The northeast [wall] contains [a quotation] dealing with the evils of slavery and the need for education . . . .  [And,] the northwest wall [contains a quotation] expressing Jefferson's commitment to freedom of religion.

(Lorenzetti Decl. Att. 1 at 2.)  The full text of the inscribed quotations appears on pages two and three of Attachment 2 to the Lorenzetti Declaration.  There is also a frieze that encircles the Memorial's interior chamber.  (See Lorenzetti Decl. Att. 3 at 15; Lorenzetti Decl. Att. 6.)  The frieze contains the following inscription from one of Jefferson's writings:  "I have sworn upon the altar of God eternal hostility against every form of tyranny over the mind of man."  (See id.)

In addition to the north entryway, the Memorial's interior chamber has three other large, open-air entryways (the "three other entryways")—one on its south side, one on its east side, and one on its west side.  (See Lorenzetti Decl. ¶15.)  The three other entryways do not provide a means to enter or exit the Memorial.  (See id.)  Rather, they lead to a walkway that runs along the Memorial's exterior.  (See id.)  A row of Ionic columns marks the outer-edge of that walkway.  (See id.)  That row of Ionic columns is part of the Memorial's outermost series of columns.

The Jefferson Memorial is open 24 hours a day, and is visited by large numbers of people.  (See Compl. ¶¶9-10.)  In 2008, approximately 2,363,000 people visited the Memorial.  (Lorenzetti Decl. ¶18.)  Moreover, people visit the Memorial at all hours of the day, including late at night.  (See id.)

C.    **The Alleged Events Underlying this Lawsuit**[11]

At about 11:45 p.m. on April 12, 2008, Plaintiff and approximately 17 of her friends

gathered at the Jefferson Memorial "to celebrate and honor Thomas Jefferson, his ideals, and his

political legacy, on the occasion of his birth." (Compl. ¶¶12, 14.)  Plaintiff and her friends chose

to express their esteem for Jefferson by dancing.  (Id. at ¶13.)  They commenced dancing inside

the Memorial (in its interior chamber) at approximately 11:55 p.m., and "danced for the most

part by themselves, in place, each listening to his or her music on headphones."  (Id.; see id. at

¶16 (alleging that the dancers were ultimately pushed "out of the Jefferson Memorial," thus

showing that they were dancing within the Memorial); Hilliard Decl. ¶12 (clarifying that Plaintiff

and her friends were dancing within the Memorial's interior chamber).)  In addition to Plaintiff

and her friends, there were a few other visitors at the Memorial at the time of the dancing.  (See

Compl. ¶15.)

Shortly after Plaintiff started dancing, Officer Hilliard approached her.  (See id. at ¶¶16-

17.)  At that time, Plaintiff was "dancing in place [and] listening to music through earbuds."  (Id.

at ¶17.)  Officer Hilliard ordered Plaintiff to stop what she was doing and leave the Memorial.

(See id.)  Plaintiff, however, did not do so; instead, she removed a single earbud and questioned

the basis of Officer Hilliard's order.  (See id. at ¶18.)  Officer Hilliard responded by again

ordering Plaintiff to "stop dancing and leave the Jefferson Memorial."  (Id.)  Yet, Plaintiff still

refused to do so; she stated that she would stop dancing and leave only if Officer Hilliard

provided her with a lawful reason why she should do so.  (See id. at ¶19.)  At that point, Officer

---

[11] Defendants dispute many of the allegations in the Complaint.  (See, e.g., Hilliard Decl. Att. A & ¶18 (setting forth Officer Hilliard's recollection as to the circumstances that precipitated Plaintiff's arrest and the manner in which he effectuated her arrest).)  However, for purposes of the instant motion to dismiss, Defendants accept the factual allegations in the Complaint as true.  If this Court were to deny the instant motion, Defendants would seek to conduct discovery to develop the factual record and then move for summary judgment.

Hilliard arrested Plaintiff and placed her in handcuffs.  (Id.; Hilliard Decl. ¶18 (clarifying that Plaintiff was placed in handcuffs at the time of her arrest).)  Plaintiff was ultimately charged with interfering with an agency function, pursuant to 36 C.F.R. § 2.32(a)(1)-(2), and demonstrating without a permit, pursuant to 36 C.F.R. § 7.96(g)(3)(ii)(C).  (See Compl. ¶¶22, 24.)  While effectuating Plaintiff's arrest, Officer Hilliard allegedly "ripp[ed] apart her earbud, shov[ed] her against a pillar, and violently twist[ed] her arm."  (Id. at ¶21.)  Notably, Plaintiff has not identified a physical injury that she suffered as a result of her arrest.  Nor has Plaintiff alleged that she required medical attention as a result of her arrest.  While Officer Hilliard was interacting with Plaintiff, several of his Park Police officer colleagues were ushering her friends out of the Memorial.  (See id. at ¶16.)

> **D.**     **The Relief that Plaintiff Is Seeking In this Lawsuit**

In this action, Plaintiff is seeking a declaratory judgment that:  (1) she and others have a First Amendment right to engage in expressive dancing within the Jefferson Memorial; and (2) 36 C.F.R. §§ 2.32(a)(1)-(2) and 7.96(g)(3)(ii)(C) are unconstitutional to the extent that they are applied to prohibit such activity.  (See id. at ¶36.)  Plaintiff also wants this Court to issue an order enjoining the government from enforcing 36 C.F.R. §§ 2.32(a)(1)-(2) and 7.96(g)(3)(ii)(C) in such a manner as to forbid expressive dancing within the Jefferson Memorial.  (See id. at Prayer for Relief ¶5.)  In addition, in this action, Plaintiff is seeking money damages from Officer Hilliard in his individual capacity.  (See id. at ¶¶28-34.)  Plaintiff claims that she is entitled to such relief from Officer Hilliard because:  (1) he violated her rights under the First Amendment by causing her to stop engaging in expressive dancing within the Jefferson Memorial (see id. at ¶33); and (2) he violated her rights under the Fourth Amendment by

arresting her without probable cause and by using excessive force to effectuate her arrest (see id. at ¶29).

## II.    LEGAL STANDARDS

A motion to dismiss tests the legal sufficiency of the complaint.  See Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002); Ramer v. United States, No. 06-1276, 2009 WL 1528765, at *3 (D.D.C. June 2, 2009).  A motion to dismiss should be granted if the complaint fails to "'state a claim to relief that is plausible on its face.'"  Klayman v. Barmak, No. 08-1005, 2009 WL 2015141, at *2 (D.D.C. July 14, 2009).  In deciding whether a complaint states a claim to relief that is plausible on its face, a court must accept the plaintiff's factual allegations as true, and give the plaintiff every favorable inference that may be drawn from the facts alleged.  See id. at *2-3.  However, a "court need not accept inferences drawn by [the] plaintiff[] if such inferences are unsupported by the facts set out in the complaint."  Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).  A court also need not accept legal conclusions couched as factual allegations.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).  In resolving a motion to dismiss, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice."  Gustave-Schmidt v. Chao, 226 F. Supp. 2d 191, 196 (D.D.C. 2002); see E.E.O.C. v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624 (D.C. Cir. 1997).

## III.    ARGUMENT

This action should be dismissed because Plaintiff is not entitled to any of the relief that she is seeking.  First, Plaintiff is not entitled to the declaratory or injunctive relief that she is

seeking.  (See infra Part III.A.1-2.)  And, second, Plaintiff is not entitled to obtain money

damages from Officer Hilliard in his individual capacity.  (See infra Part III.B.1-2.)

A.     **Plaintiff Is Not Entitled to the Declaratory or Injunctive Relief that She Is Seeking**

As stated above, in this action, Plaintiff is seeking a declaratory judgment that:  (1) the

First Amendment gives her and others the right to engage in expressive dancing within the

Jefferson Memorial; and thus (2) the challenged regulations, 36 C.F.R. §§ 2.32(a)(1)-(2) and

7.96(g)(3)(ii)(C), are unconstitutional to the extent that they are applied to prohibit such activity.

(See supra Part I.D.)  Plaintiff is also seeking an order enjoining the government from enforcing

the challenged regulations so as to prohibit expressive dancing within the Jefferson Memorial.

(See id.)  Plaintiff, however, is not entitled to the declaratory or injunctive relief that she is

seeking.  Her claim to the contrary is based upon a false premise—that the public (herself

included) has a First Amendment right to engage in expressive dancing within the Jefferson

Memorial.  It does not.  The First Amendment does not give members of the public an unfettered

right to express their views on government property "'whenever and however . . . they please.'"

Greer v. Spock, 424 U.S. 828, 836 (1976); see Cornelius v. NAACP Legal Def. & Educ. Fund,

Inc., 473 U.S. 788, 799-800 (1985) ("Nothing in the Constitution requires the Government freely

to grant access to all who wish to exercise their right to free speech on every type of Government

property without regard to the nature of the property or to the disruption that might be caused by

the speaker's activities."); U.S.P.S. v. Council of Greenburgh Civic Ass'ns, 453 U.S. 114, 129

(1981) ("[T]he First Amendment does not guarantee access to property simply because it is

owned or controlled by the government.").  And, as shown below, the First Amendment does not

give Plaintiff or anyone else the specific right to engage in expressive dancing within the

Jefferson Memorial.

The conclusion that neither Plaintiff nor anyone else has a First Amendment right to engage in expressive dancing within the Jefferson Memorial follows from the fact that the interior of the Jefferson Memorial is a nonpublic forum.[12]  (See infra Part III.A.1)  Because the interior of the Jefferson Memorial is a nonpublic forum, the government may prohibit expressive activities therein—without violating the First Amendment—so long as the prohibition is viewpoint neutral and reasonable.  (See id.)  Here, the prohibition on expressive dancing within the Jefferson Memorial satisfies those requirements.  (See id.)  Indeed, the regulation pursuant to which expressive dancing is prohibited, 36 C.F.R. § 7.96(g)(3)(ii)(C), is both viewpoint neutral and reasonable (insofar as it is applied to prohibit expressive dancing).  (See id.)  Thus, the prohibition on expressive dancing within the Memorial is constitutional.  (See id.)  And, consequently:  (1) no member of the public (Plaintiff included) has a First Amendment right to engage in expressive dancing within the Memorial; and (2) the challenged regulations, 36 C.F.R. §§ 2.32(a)(1)-(2) and 7.96(g)(3)(ii)(C), are constitutional to the extent that they are applied to prohibit such dancing.  (See id.)  Accordingly, Plaintiff is not entitled to the declaratory or injunctive relief that she is seeking.  (See id.)

Moreover, even if the interior of the Jefferson Memorial were a public forum, the prohibition on expressive dancing therein would still be constitutional.  (See infra Part III.A.2.)  The government may prohibit expressive activities in a public forum—without violating the First Amendment—so long as the prohibition is content neutral, is narrowly tailored to serve a significant government interest, and leaves open ample alternative channels for communication.  (See id.)  Here, the relevant regulation, 36 C.F.R. § 7.96(g)(3)(ii)(C), satisfies each of those

_____

[12] For purposes of the instant motion, Defendants assume that the dancing at issue in this case constitutes speech protected by the First Amendment.  If it did not, then Plaintiff's request for declaratory and injunctive relief would be appropriately denied for that reason alone.  See Cornelius, 473 U.S. at 797.

requirements (insofar as it is applied to prohibit expressive dancing).  (See id.)  Thus, regardless of whether the interior of the Jefferson Memorial is a public or a nonpublic forum, the prohibition on expressive dancing therein is constitutional.  Accordingly, under no circumstances is Plaintiff entitled to the declaratory or injunctive relief that she is seeking.

1.    The Interior of the Jefferson Memorial is a Nonpublic Forum, and 36 C.F.R. § 7.96(g)(3)(ii)(C) Is Viewpoint Neutral and Reasonable

To determine whether a restriction on expressive activity on public property is constitutional, a court must first identify the nature of the property.  The nature of the property dictates the showing that the government must make to establish that its restriction is constitutional.  See Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 44 (1983).

The Supreme Court has recognized three types of public property for purposes of constitutional analysis:  (1) the traditional public forum; (2) the designated public forum; and (3) the nonpublic forum.  See id. at 45-46.  If the government is seeking to restrict expressive activity within a traditional public forum or a designated public forum, it must show that the restriction is "content-neutral, [is] narrowly tailored to serve a significant government interest, and leave[s] open ample alternative channels of communication."  Id.  If, however, the government is seeking to restrict expressive activity within a nonpublic forum, it need only show that the restriction is "reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view."  Id. at 46.

A traditional public forum is a site that "by long tradition or by government fiat ha[s] been devoted to assembly and debate."  Id. at 45.  It is a place that has historically "'been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.'"  Id.  Ordinarily, streets, sidewalks, and parks constitute traditional public forums.  See id.; see also United States v. Grace, 461 U.S. 171, 180 (1983) ("The public sidewalks

forming the perimeter of the Supreme Court grounds . . . are public forums."); Henderson v. Lujan, 964 F.2d 1179, 1182-83 (D.C. Cir. 1992) (holding that certain public sidewalks located near the Vietnam Veterans Memorial are public forums). However, not all such locations are traditional public forums. See Greer, 424 U.S. at 838 (holding that the sidewalks and other publicly-accessible areas within a particular military base are not public forums); Henderson, 964 F.2d at 1182 (suggesting that the "paths leading to the [Vietnam Veterans] Memorial wall" may constitute nonpublic forums). For a particular site to constitute a traditional public forum, it must have "as 'a principal purpose . . . the free exchange of ideas.'" ISKCON v. Lee, 505 U.S. 672, 679 (1992) (ellipses in original) (internal quotation marks omitted).

A designated public forum is a site that has been identified by the government as a place where the public may engage in expressive activity. See Perry, 460 U.S. at 45. It is a location that has not traditionally been used by the public for expressive activity, but that the government has nonetheless "opened for use by the public as a place for [such] activity." Id. When, by affirmative conduct, the government allows expressive activity to occur in a location where it has not traditionally occurred, it thereby creates a designated public forum. See id. Importantly, the government does not create a designated public forum "by inaction or by permitting limited discourse." Cornelius, 473 U.S. at 802. Nor does the government create a designated public forum by permitting "members of the public . . . to come and go at will." Grace, 461 U.S. at 177. Rather, the government creates a designated public forum "only by opening a nontraditional forum for public discourse." Cornelius, 473 U.S. at 802.

Public property that does not constitute a traditional public forum or a designated public forum is a nonpublic forum. See Perry, 460 U.S. at 46. Indeed, the Supreme Court has

characterized nonpublic forums as "[p]ublic property which [are] not by tradition or designation a forum for public communication." See id.

Deciding whether a particular site is a public or a nonpublic forum requires a particularized inquiry. As stated above, a particular street, sidewalk, or park may constitute a public forum, while another may not. It is the unique characteristics of a particular site (including the site's location and purpose) that governs whether or not it is a public forum. See United States v. Kokinda, 497 U.S. 720, 728-29 (1990) (plurality opinion) (not "every public sidewalk is a public forum"; "the location and purpose of a publicly owned sidewalk is critical to determining whether [it] constitutes a public forum"); Grace, 461 U.S. at 179-80 (relying on the unique characteristics of the sidewalks surrounding the Supreme Court building in concluding that they are public forums). Henderson v. Lujan is instructive on this point. In Henderson, the D.C. Circuit addressed whether two sidewalks near, but exterior to, the Vietnam Veterans Memorial are public or nonpublic forums. See 964 F.2d at 1180. In holding that the exterior sidewalks are public forums, the D.C. Circuit relied upon the following, site-specific factors: (1) the sidewalks "are physically indistinguishable from ordinary sidewalks used for the full gamut of urban walking"; (2) the sidewalks "are used by thousands of pedestrians every year, including not only Memorial visitors but also people going to other places"; and (3) there was nothing in the record to suggest that the sidewalks had a specialized use. Id. at 1182; see also Grace, 461 U.S. at 179-80 (in holding that the sidewalks surrounding the Supreme Court building are public forums, the Court relied upon the fact that the sidewalks "are indistinguishable from any other sidewalks in Washington, D.C."; the Court found it significant that "[t]here is no separation, no fence, and no indication whatever to persons stepping from the street to the curb and sidewalks . . . that they have entered some special type of enclave").

Importantly, in <u>Henderson</u>, the D.C. Circuit went on to state that the "paths leading to the Memorial wall" might be nonpublic forums.  964 F.2d at 1182.  It reasoned that the paths' "evidently more specialized use may outweigh the attributes that would otherwise mark them as public forums."  <u>Id.</u>  The D.C. Circuit also observed that "when government has dedicated property to a use inconsistent with conventional public assembly and debate . . . [,] then the inconsistency precludes classification as a public forum."  <u>Id.</u>

i.   *The interior of the Jefferson Memorial is a nonpublic forum*

In light of all of the above, it is clear that the interior of the Jefferson Memorial is a nonpublic forum.  It is not a place that "by long tradition or by government fiat" has "'been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions."  <u>Perry</u>, 460 U.S. at 45; (<u>see</u> <u>supra</u> Part I.A (demonstrating that the interior of the Memorial has been closed to expressive activities for more than 30 years)).  Nor does the interior of the Memorial have "as a principal purpose . . . the free exchange of ideas."  <u>ISKCON</u>, 505 U.S. at 679.  In fact, its principal purpose—to provide an atmosphere of calm, tranquility, and reverence for those who wish to celebrate and honor Jefferson and enjoy and contemplate the Memorial itself, <u>see</u> 41 Fed. Reg. at 12880; (Lorenzetti Decl. ¶28)—is inimical to expressive activity.  Thus, the interior of the Memorial is not a traditional public forum.  The interior of the Memorial is also not a designated public forum.  It is not a location that the government has "opened for use by the public as a place for expressive activity."  <u>Perry</u>, 460 U.S. at 46.  Indeed, the longstanding prohibition on expressive activities within the Memorial (<u>see</u> <u>supra</u> Part I.A) establishes that the site is not a designated public forum.[13]  Because the interior of the Memorial

---

[13] The fact that the government allows visitors to talk, make a degree of noise, and take and pose for pictures within the Jefferson Memorial (<u>see</u> Compl. ¶10) does not transform the Memorial into a designated public forum.  <u>See</u> <u>Cornelius</u>, 473 U.S. at 802 ("The government

is not a traditional public forum or a designated public forum, it is properly classified as a

nonpublic forum.  See Perry, 460 U.S. at 46 (characterizing a nonpublic forum as a site that is

not by tradition or designation a public forum).

 The conclusion that the interior of the Memorial is a nonpublic forum is compelled by the

Memorial's purpose, physical characteristics, and regulatory history.  First, unlike the sidewalks

at issue in Henderson, the Memorial—specifically, its interior—has historically had, and

continues to have, a specialized purpose.  As stated above, it is meant to provide a place of calm,

tranquility, and reverence where visitors can go to celebrate and honor Jefferson and enjoy and

contemplate the Memorial itself.  See 41 Fed. Reg. at 12880; (Lorenzetti Decl. ¶28).  That

purpose has nothing to do with the free exchange of ideas.  In fact, expressive activity (dancing

included) is incompatible with that purpose.  The fact that the Memorial's interior has a

specialized purpose that is inconsistent with expressive activity precludes a finding that the site is

a public forum.  See Henderson, 964 F.2d at 1182 (indicating that where a site has a specialized

use that is inconsistent with expressive activity, the site cannot be classified as a public forum).

 Second, the Memorial's physical characteristics also preclude a finding that its interior is

a public forum.  A visitor entering the Memorial cannot help but realize that he has "entered

some special type of enclave."  Grace, 461 U.S. at 180.  The Memorial is not akin to those places

that have been found to constitute public forums, such as public streets, sidewalks, and parks.

The Memorial is an immense domed structure.  (See supra Part I.B.)  It is surrounded on all sides

by Ionic columns.  (See id.)  It has a grand entrance.  (See id.)  And, it has an interior chamber

that is dominated by a 19-foot-high statue of Jefferson.  (See id.)  The Memorial is far more akin

---

does not create a public forum by inaction or by permitting limited discourse, but only by
intentionally opening a nontraditional forum for public discourse.").

to a temple or a shrine than a place of public expression.[14]  Indeed, it was designed to resemble

the Pantheon, a Roman temple.  (See id.)  And, it is situated in a location of national

significance.  (See id. (explaining that the Jefferson Memorial is the southernmost point in a

carefully-designed compass-like scheme also involving the Washington Monument, the Capitol,

the White House, and the Lincoln Memorial).)

Moreover, to gain access to the Memorial's interior, a visitor must affirmatively step off

of a public path, ascend more than 40 steps, and pass through a series of Ionic columns.  (See id.)

The Memorial's interior is thus physically distinct from the paths and parkland that surround it.

That fact supports the conclusion that the site is a nonpublic forum.  Cf. Grace, 461 U.S. at 180

(finding it significant that "[t]here is no . . . indication whatever to persons [stepping onto the

sidewalks surrounding the Supreme Court building] that they have entered some special type of

enclave"); Henderson, 964 F.2d at 1182 (finding it significant that the sidewalks at issue were

"physically indistinguishable from ordinary sidewalks").  In addition, the Memorial's interior is

not a location that one might simply happen upon.  It is not a thoroughfare to any other location.

A visitor who finds himself within the Memorial has the express purpose of being there.  That

fact also supports the conclusion that the Memorial's interior is a nonpublic forum.  Cf.

Henderson, 964 F.2d at 1182 (finding it significant that the sidewalks at issue "are used by

thousands of pedestrians every year, including not only Memorial visitors but also people going

to other places").  The conclusion that the Memorial's interior is a nonpublic forum is also

supported by the fact that there exists a sign in the north entryway that says, "QUIET RESPECT

---

[14] The fact that the interior walls of the Memorial are inscribed with meaningful
quotations reflecting national values (see supra Part I.B) reinforces the Memorial's status as a
shrine.

PLEASE."  (See supra Part I.B.)  Taken together, the physical characteristics of the Memorial

render inescapable the conclusion that its interior is a nonpublic forum.

Finally, the Memorial's regulatory history provides additional support for the conclusion

that its interior is a nonpublic forum.  Since at least 1976, demonstrations and other expressive

activities have been prohibited within the Memorial.  (See supra Part I.A.)  To be sure, the fact

that expressive activities have been prohibited within the Memorial for more than 30 years is not

dispositive.  See Henderson, 964 F.2d at 1183.  However, it is significant.  See Grace, 461 U.S.

at 177 (identifying public forums as places that have "historically [been] associated with the free

exercise of expressive activities" (emphasis added)); Marlin v. Dist. of Columbia Bd. of Election

& Ethics, 236 F.3d 716, 719 (D.C. Cir. 2001) (in holding that the interior of a polling place is a

nonpublic forum, the D.C. Circuit stated that, because there have been "longstanding limitations

on polling place speech, we do not see how the polls can fairly be described either as 'places

which by long tradition or by government fiat have been devoted to assembly and debate,' or as

places designated by the government 'for use by the public at large for assembly and speech, for

use by certain speakers, or for the discussion of certain subjects'").

   ii. *The regulation pursuant to which expressive dancing is prohibited,*
    *36 C.F.R. § 7.96(g)(3)(ii)(C), is viewpoint neutral and reasonable*

For the reasons set forth above, the interior of the Jefferson Memorial is a nonpublic

forum.  Thus, the government may prohibit expressive activities within the Memorial—without

violating the First Amendment—so long as the prohibition is:  (1) viewpoint neutral; and

(2) "reasonable in light of the use to which [the Memorial has been] dedicated."  Grace, 461 U.S.

at 178; see Cornelius, 473 U.S. at 806.  As to the reasonableness requirement, the Supreme Court

has emphasized that "[t]he Government's decision to restrict access to a nonpublic forum need

only be reasonable; it need not be the most reasonable or the only reasonable limitation. . . . [A]

finding of strict incompatibility between the nature of the speech or the identity of the speaker and the functioning of the nonpublic forum is not mandated." Cornelius, 473 U.S. at 808 (emphasis in original); see Marlin, 236 F.3d at 720.

Here, the prohibition on expressive dancing within the Jefferson Memorial satisfies the above requirements. As stated above, expressive dancing is prohibited within the Memorial pursuant to 36 C.F.R. § 7.96(g)(3)(ii)(C), and that regulation is both viewpoint neutral and reasonable (insofar as it is applied to prohibit expressive dancing). First, 36 C.F.R. § 7.96(g)(3)(ii)(C) is viewpoint neutral. There can be no dispute on this point. The regulation prohibits an array of expressive activities within the Jefferson Memorial, regardless of the viewpoint of the speaker. Notably, in her Complaint, Plaintiff has not alleged that 36 C.F.R. § 7.96(g)(3)(ii)(C) is not viewpoint neutral. Nor has she alleged any facts suggesting that the regulation is applied to prohibit expressive dancing in a way that is not viewpoint neutral.

Second, 36 C.F.R. § 7.96(g)(3)(ii)(C) is reasonable (insofar as it is applied to prohibit expressive dancing). The regulation is aimed at maintaining "an atmosphere of calm, tranquility, and reverence" within the Memorial. See 41 Fed. Reg. at 12880. Maintaining such an atmosphere within the Memorial is a legitimate goal. See Henderson, 964 F.2d at 1184 (observing that the government's asserted "interest in maintaining a tranquil mood at the [Vietnam Veterans] Memorial wall is similar to ones that the Supreme Court and [the D.C. Circuit] have recognized as substantial"). And, the application of the regulation to prohibit expressive dancing within the Memorial is a reasonable means of achieving that goal. Indeed, to allow just one or two people to engage in expressive dancing within the Memorial could reasonably be expected to undermine the atmosphere of calm, tranquility, and reverence that the

government is trying to maintain.[15]  Of course, in reality, the government could not limit the number of expressive dancers within the Memorial to just one or two people.  If the government were to allow one or two people to engage in expressive dancing within the Memorial, it would have to allow all members of the public to do so as well.  See Clark v. Community for Creative Non-Violence, 468 U.S. 288, 297-98 (1984); Heffron v. ISKCON, 452 U.S. 640, 652 (1981); Mahoney v. U.S.M.S., 454 F. Supp. 2d 21, 35 (D.D.C. 2006).  And, permitting the public at large to engage in expressive dancing within the Memorial could reasonably be expected to lead to a situation where it would be impossible to provide visitors with an atmosphere of calm, tranquility, and reverence.  That is true regardless of whether members of the public choose to dance silently and for the most part by themselves and in place (i.e., in the manner in which Plaintiff claims that she and her friends were dancing (see Compl. ¶13)) or in a more boisterous manner.  In light of all of the above, the application of 36 C.F.R. § 7.96(g)(3)(ii)(C) to prohibit expressive dancing within the Memorial is reasonable.  See Cornelius, 473 U.S. at 810 (holding that the government does not need to wait until it has "conclusive proof of the actual effect" of allowing an activity in order to restrict the activity in a nonpublic forum).

Because the interior of the Jefferson Memorial is a nonpublic forum, and because the prohibition on expressive dancing therein meets the requirements for prohibiting expressive activities within such a forum, the prohibition is constitutional.  Thus:  (1) no member of the public (Plaintiff included) has a First Amendment right to engage in expressive dancing within the Memorial; and (2) 36 C.F.R. §§ 2.32(a)(1)-(2) and 7.96(g)(3)(ii)(C) are constitutional to the

---

[15] Expressive dancing is an activity that is different in kind from loud talking, incidental noise-making, and taking and posing for pictures.  It is axiomatic that the latter activities would not undermine the atmosphere that the government is trying to maintain within the Jefferson Memorial in a way that is even remotely comparable to expressive dancing.  Thus, Plaintiff's allegation that visitors to the Memorial "talk loudly," "make noise," and "take and pose for photographs" (Compl. ¶10) is immaterial.

extent that they are applied to prohibit such dancing.  Accordingly, Plaintiff is not entitled to the declaratory or injunctive relief that she is seeking.

2.    Even if the Interior of the Jefferson Memorial Were a Public Forum, the Prohibition on Expressive Dancing Therein Would Still Be Constitutional

If the interior of the Jefferson Memorial were a public forum, then the prohibition on expressive dancing therein would be constitutional if it is "content-neutral, [is] narrowly tailored to serve a significant government interest, and leave[s] open ample alternative channels of communication." Perry, 460 U.S. at 45-46; see Clark, 468 U.S. at 293.  As demonstrated below, the regulation pursuant to which expressive dancing is prohibited, 36 C.F.R. § 7.96(g)(3)(ii)(C), satisfies each of the above requirements (insofar as it applies to prohibit expressive dancing).  Thus, even if the interior of the Jefferson Memorial were a public forum, the prohibition on expressive dancing would be constitutional.

First, 36 C.F.R. § 7.96(g)(3)(ii)(C) is content neutral.  By its plain text, the regulation applies to all those who wish to engage in demonstrations or other expressive activities within the Memorial, irrespective of their message.  Second, 36 C.F.R. § 7.96(g)(3)(ii)(C) serves a significant government interest.  As stated above, it is aimed at maintaining "an atmosphere of calm, tranquility, and reverence" within the Memorial.  See 41 Fed. Reg. at 12880.  Notably, the D.C. Circuit has recognized that that interest (i.e., "maintaining a tranquil mood" at a public memorial) is a significant one.  See Henderson, 964 F.2d at 1184.  Third, 36 C.F.R. § 7.96(g)(3)(ii)(C) leaves open ample alternative channels of communication.  It applies only to the area within the Memorial's "outermost series of columns." See 36 C.F.R. § 7.96(g)(3)(ii)(C).  Thus, those like Plaintiff who wish to engage in expressive dancing may do so, among other places, on the Memorial's north steps, on the paths leading to the Memorial, and in the parkland surrounding the Memorial.  (See Lorenzetti Decl. Att. 7 at 156 (containing a diagram that

identifies the outer boundaries of the prohibition on expressive activities within the Jefferson Memorial); Lorenzetti Decl. ¶29.)

Finally, insofar as 36 C.F.R. § 7.96(g)(3)(ii)(C) is applied to prohibit expressive dancing, it is narrowly tailored to serve the government's (significant) interest in maintaining an atmosphere of calm, tranquility, and reverence within the Memorial.  To satisfy the "narrowly tailored" requirement, a prohibition "'need not be the least restrictive or least intrusive means' of serving the government's . . . interest[]."  Am. Library Ass'n v. Reno, 33 F.3d 78, 88 (D.C. Cir. 1994).  Rather, a prohibition "will meet the . . . 'narrowly tailored' requirement if a substantial portion of the burden it imposes furthers the Government's interest, even though a less intrusive alternative might also exist."  Id.; see Ward v. Rock Against Racism, 491 U.S. 781, 800 (1989) ("So long as the means chosen [to further the government's interest] are not substantially broader than necessary to achieve the government's interest . . . , the [prohibition] will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative.").  Moreover, courts "have been loath to second-guess the Government's judgment [regarding how best to further its interest]."  Bd. of Trustees of State Univ. of New York v. Fox, 492 U.S. 469, 478 (1989); see Clark, 468 U.S. at 299.

Here, it is clear that insofar as 36 C.F.R. § 7.96(g)(3)(ii)(C) is applied to prohibit expressive dancing, "a substantial portion of the burden [that it] imposes furthers the Government's interest" in maintaining an atmosphere of calm, tranquility, and reverence within the Memorial.  Am. Library Ass'n, 33 F.3d at 88.  Permitting expressive dancing of any kind, by any number of people, within the Memorial could reasonably be expected to undermine the government's asserted interest.  Moreover, as stated above, if the government were to allow even one or two people to engage in expressive dancing within the Memorial, it would have to allow

the rest of the public to do so as well.  See Clark, 468 U.S. at 297-98; Heffron, 452 U.S. at 652;

Mahoney, 454 F. Supp. 2d at 35.  And, allowing anyone who wants to engage in expressive

dancing within the Memorial to do so could reasonably be expected to spoil the atmosphere of

calm, tranquility, and reverence that the government is trying to maintain.  Importantly, in

evaluating the narrowly-tailored requirement, it is appropriate to consider not only the

consequences of granting an exemption solely to the complaining party, but also what could

reasonably be expected to occur if every individual to whom a restriction applies were freed of

its limitations.  See id.

In light of the above, even if the interior of the Jefferson Memorial were a public forum,

the prohibition on expressive dancing therein would be constitutional.  Thus, even if the interior

of the Jefferson Memorial were a public forum:  (1) neither Plaintiff nor anyone else would have

a First Amendment right to engage in expressive dancing therein; and (2) 36 C.F.R.

§§ 2.32(a)(1)-(2) and 7.96(g)(3)(ii)(C) would be constitutional to the extent that they are applied

to prohibit such dancing.  Thus, regardless of whether the Memorial is a public or a nonpublic

forum, Plaintiff is not entitled to the declaratory or injunctive relief that she is seeking.

###    B.    Plaintiff Is Not Entitled to Obtain Money Damages from Officer Hilliard

Plaintiff is seeking money damages from Officer Hilliard in his individual capacity based

upon her allegations that:  (1) he violated her rights under the First Amendment when he caused

her to stop engaging in expressive dancing within the Jefferson Memorial; and (2) he violated

her rights under the Fourth Amendment when he arrested her.  (See Compl. ¶¶28-34.)  Plaintiff is

thus pursuing Bivens claims against Officer Hilliard under the First and Fourth Amendments.[16]

_____

[16] Pursuant to the decision in Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S.
388 (1971), in certain circumstances, litigants are permitted to obtain money damages from

(See id.)  However, Plaintiff is not entitled to obtain money damages from Officer Hilliard as a result of his alleged misconduct.  The doctrine of qualified immunity shields Officer Hilliard from liability for such damages.  Thus, Plaintiff's Bivens claims fail as a matter of law.

The doctrine of qualified immunity shields government officials "'from liability for [money] damages insofar as their [challenged] conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 129 S. Ct. 808, 815 (2009); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Once a government official invokes the doctrine of qualified immunity in response to a Bivens claim, the plaintiff must show that:  (1) the facts that he has alleged in his complaint make out a violation of a constitutional right; and (2) the constitutional right at issue was clearly established at the time of the official's alleged misconduct.  See Pearson, 129 S. Ct. at 815-16, 818; Saucier v. Katz, 533 U.S. 194, 201-02 (2001).  If the plaintiff fails to make either of the above showings, the government official cannot be held liable for money damages and the Bivens claim fails.  See id.

In deciding whether a constitutional right was clearly established, a court must not define the right in overly general terms.  See Anderson v. Creighton, 438 U.S. 635, 639-40 (1987); Butera v. Dist. of Columbia, 235 F.3d 637, 646 (D.C. Cir. 2001).  Rather, a court must define the right with a fair degree of specificity, such that the government official who is charged with misconduct could have evaluated whether his "'conduct might give rise to liability for damages'" at the time that he acted.  Anderson, 438 U.S. at 639; see Butera, 235 F.3d at 646.  Moreover, in deciding whether a constitutional right was clearly established, "[t]he relevant dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Saucier, 533 U.S. at 202.  Thus, the inquiry is an objective one.  See

government officials who have violated their constitutional rights.  See Wilson v. Layne, 526 U.S. 603, 609 (1999).

id.; Olaniyi v. Dist. of Columbia, 416 F. Supp. 2d 43, 53 (D.D.C. 2006).  For a constitutional

right to be clearly established, the "contours of the right must be sufficiently clear that a

reasonable official would understand that what he is doing violates that right."  Anderson, 483

U.S. at 640.  If, when a government official acted, the law was unsettled such that a reasonable

official could not have been certain that his conduct violated a constitutional right, then the

official is entitled to qualified immunity.  See Mitchell v. Forsyth, 472 U.S. 511, 535 (1985).

       1.     Plaintiff's First Amendment Bivens Claim Fails

Plaintiff's First Amendment Bivens claim is premised upon her assertion that Officer

Hilliard violated her rights under the First Amendment when he caused her to stop engaging in

expressive dancing within the Jefferson Memorial.  (See Compl. ¶33.)  Yet, for the reasons stated

above, the First Amendment does not give Plaintiff the right to engage in expressive dancing

within the Jefferson Memorial.  (See supra Part III.A.1-2.)  Thus, Plaintiff has necessarily failed

to allege facts sufficient to establish that Officer Hilliard violated her constitutional rights when

he caused her to stop engaging in such dancing.  Plaintiff's First Amendment Bivens claim fails

for this reason alone.  See Saucier, 533 U.S. at 201 (a Bivens claim fails if the plaintiff has not

alleged facts sufficient to establish a violation of his constitutional rights).

In any event, even if Plaintiff has a First Amendment right to engage in expressive

dancing within the Jefferson Memorial, her First Amendment Bivens claim still fails.  Such a

right, if it exists, was not clearly established at the time that Officer Hilliard caused Plaintiff to

stop dancing.  Indeed, at the time that Officer Hilliard acted:

- there was a published regulation in effect that prohibited members of the public from engaging in demonstrations and other expressive activities within the Jefferson Memorial, see 36 C.F.R. § 7.96(g)(3)(ii)(C);

- the above-referenced regulation had been in effect for more than 30 years (see supra Part I.A (establishing that the regulatory prohibition on expressive activities within the Jefferson Memorial was first implemented in 1976));

- the expressive dancing in which Plaintiff and her friends were engaged fell within the scope of the regulation's prohibition on expressive activities (compare Compl. ¶¶12-14 (alleging that approximately 18 people were dancing at the same time, and that they danced largely, but not entirely, "by themselves, in place, each listening to . . . music on headphones") with 36 C.F.R. § 7.96(g)(1)(i) (prohibiting expressive conduct that "has the effect, intent or propensity to draw a crowd or onlookers")); and

- no court had addressed the issue of whether the regulatory prohibition on expressive activities within the Jefferson Memorial is constitutional, and no court had provided any indication that the prohibition might be unconstitutional if applied to expressive dancing.

In light of the above circumstances, it would not have been clear to a reasonable officer that:

(1) Plaintiff had a First Amendment right to engage in expressive dancing within the Jefferson Memorial; or (2) 36 C.F.R. § 7.96(g)(3)(ii)(C) could not be applied to prohibit such dancing. See Wilson v. Layne, 526 U.S. 603, 615-16 (1999) (if a constitutional question is difficult and there are no judicial opinions on point, those facts militate in favor of a finding of qualified immunity); Lederman v. United States, 291 F.3d 36, 47 (D.C. Cir. 2002) (observing that a government official may rely on a published regulation unless it is so grossly and flagrantly unconstitutional that no person of reasonable prudence could think it lawful[17]; finding that a longstanding policy banning expressive activity "could have misled a reasonable police officer as to the ban's constitutionality"). In other words, based upon the above circumstances, it would not have been clear to a reasonable officer that it was unlawful to cause Plaintiff to stop engaging in expressive dancing within the Memorial. Plaintiff's First Amendment Bivens claim fails for

---

[17] It cannot be said that 36 C.F.R. § 7.96(g)(3)(ii)(C) is grossly or flagrantly unconstitutional. To the contrary, it serves a significant government interest. See 41 Fed. Reg. at 12880. It is viewpoint and content neutral. See 36 C.F.R. § 7.96(g)(3)(ii)(C). And, it is reasonable and narrowly tailored (insofar as it is applied to prohibit expressive dancing). (See supra Part III.A.1-2.)

this additional reason.  See Saucier, 533 U.S. at 209 (a Bivens claim fails if the right that the

plaintiff claims was violated was not clearly established at the time of the alleged misconduct).

There is one final problem with Plaintiff's First Amendment Bivens claim:  the Supreme

Court has not recognized an implied (i.e., Bivens) cause of action to remedy a First Amendment

violation.  In Bivens, the Supreme Court recognized an implied cause of action for a Fourth

Amendment violation.  See Bush v. Lucas, 462 U.S. 367, 375 (1983).  Since Bivens, the

Supreme Court has recognized just two more implied causes of action—one for a violation of the

Due Process Clause of the Fifth Amendment, and another for an Eighth Amendment violation.

See Wilson v. Libby, 535 F.3d 697, 705 (D.C. Cir. 2008).  In most instances, the Supreme Court

has declined to recognize new Bivens causes of action.  See id.  Moreover, just a few months

ago, in Ashcroft v. Iqbal, the Supreme Court suggested that, if given the opportunity, it would

not find an implied cause of action for a violation of the First Amendment's Free Exercise

Clause.  129 S. Ct. at 1948 ("[Our] reluctance [to extend Bivens liability] might well have

disposed of respondent's First Amendment claim of religious discrimination.  For while we have

allowed a Bivens action to redress a violation of the equal protection component of the Due

Process Clause of the Fifth Amendment, we have not found an implied damages remedy under

the Free Exercise Clause.  Indeed, we have declined to extend Bivens to a claim sounding in the

First Amendment." (internal citation omitted)).

Despite the Supreme Court's express "reluctan[ce] to extend Bivens liability "'to any

new context or new category of defendants,'" id., Plaintiff has invited this Court to do just that.

This Court should decline Plaintiff's invitation.  If there is to be a decision to subject government

officials to money damages for First Amendment violations, that decision should come from

Congress, not the courts.  "'Congress is in a far better position than [the] court[s] to evaluate the

impact of [such] a new species of litigation.'" Wilkie v. Robbins, 551 U.S. 537, 562 (2007).

Moreover, "Congress can tailor any remedy to the [specific] problem [it] perceive[s]." Id.

Subjecting government officials to money damages for things like interrupting people from

dancing on government property would be a substantial expansion of Bivens liability. Such an

expansion, if it is to be made, should be made by Congress.

2.    Plaintiff's Fourth Amendment Bivens Claim Fails

Plaintiff's Fourth Amendment Bivens claim is premised upon her assertion that Officer

Hilliard violated her rights under the Fourth Amendment when he: (1) allegedly arrested her for

engaging in expressive dancing within the Jefferson Memorial without "probable cause" (the

"Bivens arrest claim"); and (2) allegedly used excessive force to effectuate the arrest (the

"Bivens excessive force claim"). (See Compl. ¶29.) However, neither the fact of Plaintiff's

arrest nor the manner in which it was effectuated provides a sufficient basis for her Fourth

Amendment Bivens claim.

i.    *Plaintiff's Bivens arrest claim fails*

Plaintiff's Bivens arrest claim fails because Plaintiff has not alleged facts sufficient to

establish that, at the time of her arrest, Officer Hilliard lacked probable cause to arrest her. At

the time of Plaintiff's arrest, there was a regulation in effect that prohibited demonstrations and

other expressive activities within the Jefferson Memorial. See 36 C.F.R. § 7.96(g)(3)(ii)(C).

Violating that regulation was an arrestable offense. See 36 C.F.R. § 1.3(a) (providing that a

violation of the provisions that appear within 36 C.F.R. § 7 "shall be punished by a fine . . . or by

imprisonment"). Moreover, at the time of her arrest, Plaintiff and approximately 17 of her

friends were engaging in expressive dancing within the Jefferson Memorial. (See Compl. ¶¶12-

14.) The expressive dancing in which Plaintiff and her friends were engaging fell within the

scope of the expressive activities prohibited within the Memorial.  (See supra 31; compare

Compl. ¶¶12-14 with 36 C.F.R. § 7.96(g)(1)(i)).  Immediately prior to Plaintiff's arrest, Officer

Hilliard twice ordered her to stop dancing and leave the Memorial.  (See Compl. ¶¶17-19.)  It

was only after Plaintiff refused to cease her unlawful, expressive activity that Officer Hilliard

arrested her.  (See id.)  Notably, in refusing to adhere to Officer Hilliard's orders, Plaintiff

violated 36 C.F.R. § 2.32(a)(1)-(2), which is also an arrestable offense.  See 36 C.F.R. § 1.3(a),

(d) (providing that a violation of the provisions that appear within 36 C.F.R. § 2, with the

exception of 36 C.F.R. § 2.23, "shall be punished by a fine . . . or by imprisonment").  In light of

the above circumstances, Officer Hilliard had probable cause to arrest Plaintiff for violating both

36 C.F.R. § 7.96(g)(3)(ii)(C) and 36 C.F.R. § 2.32(a)(1)-(2).  See Olaniyi, 416 F. Supp. 2d at 61

("'Probable cause to arrest exists when the facts and circumstances are sufficient to warrant a

prudent person to believe that the individual has committed an offense.'" (quoting Fernandors v.

Dist. of Columbia, 382 F. Supp. 2d 63, 71 (D.D.C. 2005)); see also Michigan v. DeFilippo, 443

U.S. 31, 37 (1979) (holding that probable cause exits where an arrest is effectuated based upon a

regulation that is violated in the officer's presence, even where that regulation is later determined

to be invalid).  Thus, Plaintiff's Bivens arrest claim fails.

Plaintiff's Bivens arrest claim also fails because Officer Hilliard did not violate a clearly

established Fourth Amendment right when he arrested her.  The only way that Officer Hilliard

could have violated a clearly established right in connection with Plaintiff's arrest is if it would

have been clear to a reasonable officer that Plaintiff had the right to engage in expressive dancing

within the Jefferson Memorial.  If that were the case, then Officer Hilliard would not have had

probable cause to arrest Plaintiff either for:  (1) violating 36 C.F.R. § 7.96(g)(3)(ii)(C) as a result

of her engaging in expressive dancing within the Jefferson Memorial; or (2) violating 36 C.F.R.

§ 2.32(a)(1)-(2) as a result of her not following his order to stop engaging in such dancing. Yet, for the reasons set forth above (see supra Part III.B.1), at the time of Plaintiff's arrest, it was by no means clear that Plaintiff had the right to engage in expressive dancing within the Jefferson Memorial. Thus, Officer Hilliard did not violate a clearly established right when he arrested Plaintiff, and Plaintiff's Bivens arrest claim fails. See Wardlaw v. Pickett, 1 F.3d 1297, 1304 (D.C. Cir. 1993) (police officers "are entitled to qualified immunity even if they 'reasonably but mistakenly' concluded that probable cause [to arrest] existed").

ii.    *Plaintiff's Bivens excessive force claim fails*

Plaintiff's Bivens excessive force claim fails because Plaintiff has not alleged facts sufficient to establish that Officer Hilliard used an excessive amount of force in effectuating her arrest. It is settled law that, in effectuating an arrest, "an officer has the authority to use 'some degree of physical coercion or threat thereof'' . . . , and [that] 'not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." Rogala v. Dist. of Columbia, 161 F.3d 44, 54 (D.C. Cir. 1998) (quoting Graham v. Connor, 490 U.S. 386, 395-97 (1989)); see Saucier, 533 U.S. at 208. An officer will be found to have used excessive force only "if the force used was so excessive that no reasonable officer could have believed in the lawfulness of his actions." Rogala, 161 F.3d at 54; see Wardlaw, 1 F.3d at 1303. The excessiveness of force is evaluated based on the facts and circumstances of each particular case. See Graham, 490 U.S. at 396.

Plaintiff alleges that, in effectuating her arrest, Officer Hilliard "ripp[ed] apart her earbud, shov[ed] her against a pillar, and violently twist[ed] her arm." (Compl. ¶21.) Such allegations, even if true, are insufficient to sustain a claim of excessive force. As explained above, Officer Hilliard was entitled to use a "'degree of physical coercion'" in arresting Plaintiff.

Rogala, 161 F.3d at 54. And, under the circumstances of this case, the force that Officer Hilliard

is alleged to have used was not overly excessive such that no reasonable officer could have

thought it to be lawful. At the time of Plaintiff's arrest, Plaintiff and approximately 17 of her

friends were engaging in unlawful expressive activity within the Jefferson Memorial. (See

Compl. ¶¶13-14, 17.) Moreover, Plaintiff had twice refused to follow Officer Hilliard's order to

stop engaging in the unlawful activity and leave the Memorial. (See id. at ¶¶17-19.) Plaintiff

was also listening to music through an earbud at the time of her arrest. (See id. at ¶18 (alleging

that Plaintiff had removed only one of her two earbuds prior to interacting with Officer

Hilliard).) Under these circumstances, once Officer Hilliard had decided to arrest Plaintiff, it

was reasonable for him to take quick and decisive action to: (1) remove Plaintiff's remaining

earbud from her ear; and (2) maneuver her body and arms such that he could place her in

handcuffs and effectuate her arrest. This is true even if the action resulted in damage to

Plaintiff's earbud, a shove, and a twisting of her arm. Importantly, the following considerations

provide strong support for the conclusion that, once Officer Hilliard had decided to arrest

Plaintiff, he was justified in taking quick and decisive action to effectuate the arrest (even if the

action resulted in the harms that Plaintiff has alleged): (1) Plaintiff was part of a large group and

Officer Hilliard did not know the full extent of the threat that she or her friends posed, or the type

of reaction that her arrest would have on her friends, see Saucier, 533 U.S. at 208 (finding

significant the fact that the officer did not know the full extent of the threat that he faced); and

(2) Plaintiff had refused to obey Officer Hilliard's orders prior to her arrest, which suggested that

she might try to resist arrest, see Wasserman v. Rodacker, 557 F.3d 635, 641 (D.C. Cir. 2009)

(finding that the plaintiff's refusal to follow the officer's order prior to his arrest suggested that

the he might try to resist arrest). Moreover, a shove, the twisting of an arm, and damage to a

piece of property like an earbud are acts incidental to any lawful arrest; no reasonable officer

would view them as a basis of future liability.  Furthermore, the fact that Plaintiff has not

identified a physical injury that she sustained as a result of her arrest tends to confirm that

Officer Hilliard did not use an unreasonable degree of force to effectuate the arrest.  See

Wasserman, 557 F.3d at 641; see also Wardlaw, 1 F.3d at 1304 (relying on the fact that the

plaintiff "did not consider his injuries severe enough to require medical attention").

        The D.C. Circuit's recent decision in Wasserman v. Rodacker provides strong support for

the conclusion that Plaintiff has failed to allege facts sufficient to establish a Bivens excessive

force claim.  In Wasserman, a Park Police officer arrested the plaintiff for walking his two dogs

without a leash.  557 F.3d at 636.  The circumstances of the arrest were as follows:  (1) the

officer observed the plaintiff walking his dogs without a leash, at which point the plaintiff started

to walk away quickly; (2) the officer ordered the plaintiff to stop and answer some questions;

(3) the plaintiff responded that he did not have to answer the questions and continued walking;

(4) the officer ran to catch up to the plaintiff and placed her hand on his left shoulder; (5) the

plaintiff did not offer any resistance; (6) the officer "forcefully pressed upwards on [the

plaintiff's] arm before handcuffing him, causing him pain"; and (7) the plaintiff "suffered no

bruise or injury."  Id. at 636, 641.  Under the above circumstances, the D.C. Circuit held that the

officer's use of force was not overly excessive, and rejected the plaintiff's Bivens excessive

force claim.  Id. at 641.  Notably, in doing so, the D.C. Circuit stated that the plaintiff's "refusal

to obey [the officer's] order prior to his arrest suggested that he might try to resist or escape."  Id.

The D.C. Circuit also stated that the fact that the plaintiff "suffered no bruise or injury, . . . tends

to confirm that [the officer] did not use [an excessive amount of force]."  Id.

Like the plaintiff in <u>Wasserman</u>, Plaintiff here:  (1) refused to obey a police order prior to her arrest; (2) allegedly did not resist the police officer during her arrest; (3) allegedly had her arm manipulated in an aggressive fashion during her arrest; and (4) has not identified a physical injury that she sustained as a result of her arrest.  (<u>See</u> Compl. ¶¶17-21.)  The alleged circumstances of this case are very similar to those in <u>Wasserman</u>.  The fact that the plaintiff in <u>Wasserman</u> could not make out an excessive force claim strongly supports the conclusion that Plaintiff here cannot make out such a claim either.

As a final matter, even if the force that Officer Hilliard is alleged to have used was excessive, it was not clearly established that such a degree of force was excessive at the time that Officer Hilliard acted.  Plaintiff's <u>Bivens</u> excessive force claim fails for this additional reason.

## CONCLUSION

For the reasons set forth above, this Court should GRANT the instant motion to dismiss.

Respectfully submitted,

/s/

CHANNING PHILLIPS, D.C. BAR # 415793
Acting United States Attorney

/s/

RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

/s/

CHRISTOPHER B. HARWOOD
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C.  20530
Phone: (202) 307-0372
Fax: (202) 514-8780
Christopher.Harwood@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____ )
MARY BROOKE OBERWETTER,                         )
                                                )
        Plaintiff,                              )
                                                )
        v.                                      )        Civil Action 09-0588 (JDB)
                                                )
KENNETH HILLIARD, and                           )
KENNETH L. SALAZAR,                             )
                                                )
        Defendants.                             )
_____ )

## <u>ORDER</u>

Having considered Defendant's motion to dismiss, it is this _____ day of

_____, 2009, hereby:

ORDERED that Defendant's motion is GRANTED; and it is

FURTHER ORDERED that the above-captioned action is dismissed with prejudice.

SO ORDERED.


                                        _____
                                        UNITED STATES DISTRICT JUDGE


Copy to:  ECF Counsel