IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MARY BROOKE OBERWETTER, | ) | Case No. 09-CV-0588-JDB |
| | ) | |
| Plaintiff, | ) | DECLARATION OF |
| | ) | MARY BROOKE OBERWETTER |
| v. | ) | |
| | ) | |
| | ) | |
| KENNETH HILLIARD, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

DECLARATION OF MARY BROOKE OBERWETTER

I, Mary Brooke Oberwetter, am competent to state and declare the following based on my personal knowledge:

1.    Although Officer Hilliard claims that we were dancing in the interior of the Jefferson Memorial, people were dancing both in the chamber and in the area outside of the chamber. I stayed fairly close to the chamber wall almost the entire time.

2.    No one at the Jefferson Memorial during the time I was there was singing. Singing or any sort of loud expression would not have been consistent with our intent to quietly, personally, celebrate Jefferson's birthday.

3.    There was occasional talking and some laughter among our group, as may be expected among individuals visiting the Jefferson Memorial. However, during our visit to the Memorial, it was substantially quieter than the noise level in the chamber during daytime peak visiting hours. I have been to the Jefferson Memorial at other times and experienced a great deal

of noise generated in the normal course of tourist visits there, none of which is controlled by the

Park Police, and which greatly exceeds any noise my friends and I may have incidentally made.

4.    We saw the "QUIET RESPECT PLEASE" sign and complied with it. There were

no signs visible indicating that dancing or other expressive activities, if quiet and respectful, were

prohibited.

5.    Officer Hilliard explains that his intention was to move us to a location where we

could have lawfully continued in our expressive behavior.  That sentiment was not expressed to

us, nor was Officer Hilliard able to explain what was unlawful about our expressive

behavior. With agitation, he told me that we were being disrespectful and needed to leave, but at

no point did he acknowledge that my very presence at the Memorial was out of respect and

reverence for Thomas Jefferson. In addition, at no point did he provide justification for his order

other than to repeat that we were being "disrespectful."

6.    Officer Hilliard suggests that he arrested me because of repeated refusal to stop

dancing and leave the Memorial. However, for nearly one minute and forty seconds prior to being

arrested, I was no longer dancing. Some of that time was spent "just standing there bopping" to

the music on my headphones, as Officer Hilliard later described my behavior to his colleagues at

the Central District Station at Haines Point.  However, by far, the bulk of that time was spent

neither dancing nor bopping, but speaking to Officer Hilliard about what it was I was doing

wrong at that point that necessitated my leaving the chamber.

7.    To be very clear, it was not my impression that I was being arrested because of

dancing. Rather, it was clear to me that it was my questioning of Officer Hilliard's orders that

resulted in my arrest.  At no point did I either refuse to stop dancing or refuse to exit the chamber;

I simply wanted to know why those orders were being given before following them.  I asked

Officer Hilliard repeatedly what I was doing wrong and told him that I'd happily stop doing anything illegal if told what it was. I had long since stopped dancing when I was placed under arrest – the legal justification for ordering me to leave the chamber after I'd already stopped dancing was never made clear to me. Again, I was just told that I was being disrespectful, despite the fact that the group had cleared out and I hadn't been dancing for well over a minute.

8.    Officer Hilliard claims my arm "wriggled" but any "wriggling" would have been reflexive and to be expected given how flimsy my arms are relative to Hilliard's. I didn't actively try to withdraw my arm when he "placed his hand on my arm." At the time he did that, my ear bud was in my hand and I was in the process of moving my hand towards my ear. I didn't let go of the ear bud, and it was when my arm was pulled behind me to be handcuffed that the earbud was torn; it remained in my ear. The other bud – the one that didn't get torn from the main connection line to the iPod – came out of my ear when I turned my head, but the broken one broke because it was jerked out of my hand when my arm was pulled behind my back.

9.    Prior to the arrest Officer Hilliard did, in fact, shove me. He also shoved several other people.

10.    I don't know precisely how long I had to wait to be transported to CCB for fingerprinting, but it seemed to be at least an hour, during which time I was left to sit in a small cell, still handcuffed with my hands behind my back. I certainly would have complained about that particular discomfort had there been anyone to complain to. I was not released from CCB, as Officer Hilliard states. I was taken back to Haines Point and released from there. It was upon my return to Haines Point that I was told that I was not being charged with disturbing the peace, but with interfering with an agency function.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 9th day of October, 2009.


Mary Brooke Oberwetter